In re Timothy J. RINEY, Debtor.

No. 00–09138–8W7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 23, 2001.

---

John K. Olson, Stearns, Weaver, Miller, Weissler, Alhadeff & Sitterson, PA, Tampa, FL, for debtor.

Richard C. Prosser, Stichter, Riedel, Blain & Prosser, Tampa, FL, for movant.

Shari S. Jansen, Sarasota, FL, Chapter 7 Trustee.

### Memorandum Opinion and Order Denying Motion to Dismiss Pursuant to Bankruptcy Code § 707(a)

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

This case came on for hearing on October 11, 2000, on the motion to dismiss this Chapter 7 case ("Motion to Dismiss") filed by Advanced Estimating Systems, Inc. ("Movant" or "Advanced").

The court has considered the entire record including the testimony of the debtor, Timothy J. Riney ("Debtor" or "Riney"), the exhibits received in evidence, as well as the other filings with the court.

For the reasons set forth below, the court will deny the Motion to Dismiss.

### Findings of Fact

The Debtor commenced this case under Chapter 7 on June 12, 2000 ("Petition Date"). For approximately nine years prior to the Petition Date, the Debtor and Advanced have been involved in litigation which was originally commenced by Advanced in 1991 against the Debtor and a related debtor, Damon, Inc.[1] ("Damon") in the United States District Court, Southern District of Florida, Case No. 91–8378–Civ–RYSKAMP (the "Southern District Litigation").

On July 29, 1994, a final judgment and permanent injunction (the "Final Judgment") was entered in the Southern District Litigation in favor of Advanced and against the Debtor and Damon. Pursuant to the Final Judgment, Advanced was awarded the sum of $866,000, the amount that the Debtor has listed in his schedules in this case as being owed to Advanced.

---

1. On June 15, 2000, three days after the Petition Date, the Debtor, in his capacity as president, filed a Chapter 7 case on behalf of Damon, a corporation that the Debtor and his wife owned and the Debtor operated prior to its being administratively dissolved in 1994. This court dismissed the Chapter 7 case of Damon on September 21, 2000, for cause pursuant to Bankruptcy Code § 707(a).

On April 15, 1992, the Debtor and his wife filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code in this court (the "First Bankruptcy Case"). On June 30, 1994, this court entered an order granting a motion by Advanced for relief from the automatic stay to allow the entry of a judgment against the Debtor in the Southern District Litigation. On March 16, 1995, this court entered an order dismissing the First Bankruptcy Case.

Following the dissolution of Damon in 1994, the Debtor continued his business and operations through several corporations, including Dantim, Inc. ("Dantim"), Dewitt, Josephs and Associates, Inc. ("Dewitt"), and RDT Development, Inc. ("RDT"). Although Mrs. Riney was not active in Dantim, Dewitt or RDT, she owned 100 percent of the stock of these corporations.

Following entry of the Final Judgment, Advanced commenced proceedings supplementary against certain defendants in the United States District Court, Middle District of Florida, Tampa Division, Case No. 94–103–MISC.–T–23E (the "Proceedings Supplementary"). The defendants in the Proceedings Supplementary are: the Debtor, Damon, Impact Software, Inc., Crossroads Technical Group, Inc., Mrs. Riney, RDT, and Dewitt. A trial was scheduled in the Proceedings Supplementary for July 17, 2000.

The filing of this case and the Damon case operated as a stay of the Proceedings Supplementary. Advanced filed a motion for relief from the stay on June 13, 2000, in this case. The Debtor did not oppose the relief requested, and this court entered an order granting relief from the stay with respect to the Proceedings Supplementary on August 4, 2000.

In addition to Advanced, the Debtor listed in this case debts owed to various credit card companies, his home mortgage, a car leasing company, a debt to a former attorney, and debts owed to two companies, Dewitt and RDT. Dewitt and RDT are companies that are owned and/or controlled by either the Debtor or his wife, directly or indirectly.

The only creditors who had filed proofs of claim in this case as of the claims bar date were Advanced and the mortgage holder on the Debtor's house. This is not surprising since the credit card debts had all been due for over five years as of the Petition Date. The debt listed as owing to the former attorney arose from services rendered for an unsuccessful litigation, which was concluded approximately five years ago. Payments are being made on the Debtor's secured home mortgage and car leases.

As of the Petition Date, the Debtor's schedules reflect that he owned a homestead claimed as exempt with a value of $300,000 subject to a debt of approximately $230,000; a commission due him in the amount of $1,000 claimed as exempt, and "men's pants, jackets, shirts and shoes" having a value of $1,000, and an interest in two automobiles—a 1999 Lincoln continental and a 1999 Lincoln navigator—which although listed as having a value of $30,000 each, are actually leased.[2] The Debtor does not maintain any bank accounts.

Amounts earned by the Debtor from his present employer are paid to RDT (owned by the Debtor's wife), which in turn pays the Debtor's personal expenses (such as car payments and utility bills). After payment of the Debtor's expenses, there is very little left to be paid directly to the Debtor. To the extent excess funds are received, they are paid into his wife's checking account to fund family expenses not paid by RDT.

The Debtor's income for the fiscal year June 1, 1998 to June 1, 1999 was $38,600. For the fiscal year June 1, 1999 to June 1,

---

**2.** The Debtor explained that he leases rather than purchases automobiles because he cannot afford to own them and his brother's work at Ford Motor Company allows him to lease a car at a reduced rate.

2000 his total income from RDT was approximately $29,000. The Debtor's current income as listed in the Schedule J budget filed with the court is $5,000 a month or approximately $60,000 per year. The Debtor's wife, according to the couple's last income tax return, made approximately $18,000 per year.

### Issues

There are two issues before the court. The first is the legal standard applicable in determining whether "cause" exists to dismiss this Chapter 7 case as that term is used in Bankruptcy Code § 707(a). The second is whether the facts in this case support dismissal under the appropriate standard for "cause" pursuant to § 707(a).

Both parties point to two circuit court cases which interpret "cause" in this context from arguably different perspectives—the Sixth Circuit case of *Industrial Insurance Services, Inc. v. Zick (In re Zick),* 931 F.2d 1124 (6th Cir. 1991)(*"Zick"*) and the Eighth Circuit case of *Huckfeldt v. Huckfeldt (In re Huckfeldt),* 39 F.3d 829 (8th Cir.1994)(*"Huckfeldt"*).

Advanced argues that whatever labels are used by these cases in interpreting "cause," that these cases, taken together, stand for the proposition that this court's concern should be with the "systemic integrity of the bankruptcy process," which should be available for "honest debtors," not debtors who are "seeking to use or manipulate the process for some purpose which is really not legitimate."[3]

The Debtor argues for a narrow reading of "cause." That is, "cause" as used in 707(a) should be restricted to either the three enumerated examples in 707(a)(1), (2), and (3), which all concern misbehavior by the debtor after the case is filed, or things of the same generic category. Thus, the Debtor argues that *Zick* and *Huckfeldt* in their approaches incorrectly

apply 707(a) because "none of them draw that inference that you can't include in lists of things, things which are categorically different."[4]

For the reasons set forth below, the court concludes that the correct approach to be taken in applying § 707(a) is closer to the one argued by Advanced. However, even applying this standard, it is the court's opinion that the facts of this case do not rise to the level of "cause" for purposes of dismissal of this Chapter 7 case.

### Conclusions of Law

It is clear from the undisputed facts of this case that the Debtor's only creditor of significance is Advanced. While the Debtor has other debts that he listed in his schedules, all of these debts fall into three categories. First, obligations for which he is currently making payments, such as the house mortgage and the car leases. Second, debt for which the Debtor is no longer being actively pursued—that is, the credit card debt and the debt owed to the former attorney which arose over five years ago. Third, debts to "insider" companies owned or controlled by the Debtor and/or his wife.

The Debtor has structured his financial life in such a way so as to be able to maintain a livelihood and provide for himself and his wife despite the collection efforts of Advanced. He maintains no bank accounts. His income is structured in such a fashion that no money flows directly to him after payment of all of his other expenses.

It is also clear that the Debtor has no significant assets that will be available to make any distribution to creditors. This case is essentially a "no asset" case. It can be reasonably inferred from the facts of this case that the only reason this case was filed was in order for the Debtor to

---

**3.** *Transcript of Proceedings,* Hearing of October 11, 2000, on Motion to Dismiss (Document No. 22) at 105.

**4.** *Id.* at 118.

obtain a "fresh start" through a discharge of the claim arising from the Final Judgment. This would also bring an end to Advanced's collection efforts directly against the Debtor—unless Advanced is successful in bringing an action seeking a determination that its claim is non-dischargeable under Bankruptcy Code § 523 or that the Debtor should be denied a discharge under Bankruptcy Code § 727.

The question before this court is, under these circumstances, should the Debtor be able to maintain this case so that he can obtain a discharge? Or, do these circumstances compel a *de facto* denial of his discharge through dismissal without the necessity of Advanced having to make a showing under Bankruptcy Code § 523 or Bankruptcy Code § 727?

In considering this issue, it is appropriate to review the *Zick* and *Huckfeldt* cases for guidance. Each of these cases dealt with a motion to dismiss under Bankruptcy Code § 707(a). That section provides that, "The court may dismiss a case...for cause...."

Some courts have held that "bad faith" constitutes "cause" for dismissal under § 707(a). *See Zick*, 931 F.2d 1124; *In re Tamecki*, 229 F.3d 205 (3d Cir.2000). As discussed by this court in a recent decision dealing with dismissal of an individual Chapter 7 case, while a good-faith requirement is explicitly imposed in chapter 11, 12 and 13 cases, 11 U.S.C. §§ 1129(a)(3), 1225(a)(3) and 1325(a)(3), that explicit reference is omitted in a chapter 7 case. *In re Bilzerian*, 258 B.R. 850, 855–56, (Bankr.M.D.Fla.2001)(dismissing individual Chapter 7 case for "cause" under Bankruptcy Code § 707(a))("*Bilzerian*").

■ The key differences between Chapters 11, 12 and 13 on the one hand and Chapter 7 on the other are: (1) the language of the Bankruptcy Code itself regarding "good faith", and (2) the "postfiling relationship between the debtor and

his creditors." *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184 (9th Cir.2000)("*Padilla*"). Chapters 11, 12 and 13 permit the debtor to "retain its assets and reorder its contractual obligations to its creditors. In return for these benefits, ... the debtor [must] approach its new relationship with the creditors in good faith ...." Katie Thein Kimlinger & William P. Wassweiler, *The Good Faith Fable of 11 U.S.C. § 707(a): How Bankruptcy Courts Have Invented a Good Faith Filing Requirement for Chapter 7 Debtors*, 13 Bankr.Dev. J. 61, 65 (1996) ("Kimlinger and Wassweiler").

■ On the other hand, Chapter 7, a liquidation chapter, " 'requires no ongoing relationship between the debtor and its creditors' and should be available to any debtor willing to surrender all of its nonexempt assets, 'regardless of whether the debtor's motive in seeking such a remedy was grounded in good faith.' " *Padilla*, 222 F.3d at 1193 (citing Kimlinger & Wassweiler, 13 Bankr.Dev. J. at 65).

■ Absent egregious conduct, a debtor who files a chapter 7 should not be denied a discharge by denial of the recourse to bankruptcy without a showing that the debt is nondischargeable under Bankruptcy Code § 523 or that the debtor would not qualify for a discharge under Bankruptcy Code § 727. *See In re Motaharnia*, 215 B.R. 63, 68 (Bankr.C.D.Cal.1997)(holding that § 707(a) should apply "only to egregious cases where the debtor's motives are clearly inconsistent with the established purpose of the Bankruptcy Code"). "Bad faith" taken alone is not a ground for dismissal in a Chapter 7 case under § 707(a). *Bilzerian*, 258 B.R. at 856–57.

Accordingly, in *Bilzerian*, this court agreed with the "narrow cautious approach" of *In re Khan*, 172 B.R. 613 (Bankr.D.Minn.1994), as followed by the Eighth Circuit in *Huckfeldt*.[5] That is,

5. Recently, the Ninth Circuit has agreed with the Eighth Circuit that the inquiry under

while some conduct constituting cause to dismiss may be readily characterized as "bad faith," framing the issue in such terms "may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7."[6] *Bilzerian,* 258 B.R. at 856–57 (citing to *Huckfeldt* ).

Consistent with the approach followed in *Bilzerian,* this court will focus on whether this case should be dismissed for "cause" as that term is used in § 707(a). This requires an analysis of whether the Debtor's motive and purposes are consistent with the purpose of Chapter 7—which is to provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's non-exempt assets for liquidation for the benefit of the debtor's creditors.[7]

In viewing the facts of this case, some parallels can be drawn to the *Bilzerian* case. Both cases involve debtors who have been litigating with their primary creditor for approximately a decade resulting in substantial judgments and a history of collection efforts by the creditor in other courts. In both cases, the debtors have structured their finances to insulate their income and assets from the major creditor. Both cases were filed as one of substantially "no assets." And while Riney's lifestyle in living in a $300,000 house and driving a 1999 Lincoln pales in comparison to Bilzerian's $3.5 million mansion[8], some courts have characterized similar lifestyles as "lavish." *C.f., In re LaCrosse,* 244 B.R. 583 (Bankr.M.D.Pa.1999).

There is one compelling factor, however, that distinguishes these cases. That difference is the fact that of Bilzerian's $139,762,828.17 of scheduled debt, $139,650,328.17 had been declared nondischargeable by this court in his past bankruptcy filing. This led to the conclusion that, "[i]t can reasonably be inferred from these facts that Bilzerian did not file this case to get a 'fresh start'." *Bilzerian,* 258 B.R. at 857–58. On the contrary, it is clear in this case that the Debtor filed for the specific purpose of obtaining a fresh start.

Importantly, the fact that the Debtor in this case was a party to the Proceedings Supplementary on the Petition Date, which was stayed by the filing of this case, is no longer pertinent to the Motion to Dismiss in light of the fact that the court has already granted Advanced relief from the stay to continue with the Proceedings Supplementary. Thus, Advanced will not be prejudiced in the pursuit of assets it alleges to have been fraudulently transferred.

While the Debtor has structured his finances in such a fashion to insulate his income from Advanced's collection efforts, to the extent any of these actions were improper, Advanced will have ample opportunity to pursue any improper transfers in the Proceedings Supplementary or to challenge the Debtor's discharge in this case. Section 707(a) should "not be the remedy for malfeasance that is specifically addressed by other Code sections such as

§ 707(a) dismissals should be under the statutory standard "for cause." *Padilla,* 222 F.3d 1184. Under *Padilla,* a court should look at all of the facts and circumstances and determine whether or not "cause" exists for dismissal.

**6.** Under the facts of the *Huckfeldt* case, the court ultimately held that "cause" existed to dismiss a Chapter 7 case where the debtor filed the petition to frustrate the divorce court decree and push his ex-spouse into bankruptcy, and manipulated his earnings to achieve these non-economic motives. *Huckfeldt,* 39 F.3d 829.

**7.** The court rejects Riney's argument that "cause" should be restricted to the three enumerated grounds set forth in 707(a) or to acts of a similar nature. It is a basic rule of construction applicable to the Bankruptcy Code that the word "including" is not meant to be a limiting word. *See* 11 U.S.C. § 102(3); *In Re Jones,* 114 B.R. 917, 924 (Bankr.N.D.Ohio 1990). There is no circuit court authority supporting the Debtor's contention in this regard. *See, e.g., Zick,* 931 F.2d 1124; *Huckfeldt,* 39 F.3d 829; *Padilla,* 222 F.3d 1184.

**8.** *Bilzerian,* 258 B.R. at 852–53.

those providing for exceptions to discharge." 6 Collier on Bankruptcy, ¶ 707.03[3] at 707–12 (citing *In re Padilla,* 214 B.R. 496 (9th Cir. BAP 1997)).

 The court also does not believe that the Debtor's income level of $60,000, his $300,000 homestead, and the lease of the 1999 Lincoln, even if "lavish," constitute "cause" for dismissal under § 707(a). These facts may indeed be pertinent in a given case to an inquiry as to whether a debtor's filing constitutes a substantial abuse of Chapter 7 in the context of a § 707(b)[9] motion brought to dismiss the Chapter 7. Such motions are often brought with the hope that dismissal will motivate a debtor to utilize Chapter 13 and pay a portion of the debtor's unsecured debt. However, neither § 707(b) nor Chapter 13 applies to this case.[10]

## Conclusion

This court does not believe that absent a finding of conduct that would result in a determination of nondischargeability under Bankruptcy Code § 523 or denial of a discharge under Bankruptcy Code § 727, that the Debtor's discharge should *de facto* be denied by dismissal of this Chapter 7 case under § 707(a). While there may be cases where the facts are so egregious such that "cause" would exist requiring such a dismissal, the court finds that the facts of this case do not rise to that level.

Accordingly, for the reasons set forth above, it is

ORDERED that the Motion to Dismiss is denied.

---

**9.** Congress enacted § 707(b) in the Bankruptcy Amendments and Federal Judgeship Act of 1984, ... to address some of the perceived abuses of Chapter 7. Kimlinger & Wassweiler, *supra* at 75. Had "cause" in § 707(a) been broadly construed, " § 707(b) would not have been necessary." *Padilla,* 222 F.3d at 1193–94 (holding that the debtor's credit card "bust-out" did not constitute cause under § 707(a) but was the type of misconduct justifying dismissal under § 707(b)).

**10.** Section 707(b) applies only to individuals whose debts are "primarily consumer debts." The Final Judgment is not a consumer debt. In addition, Chapter 13 has a debt limitation of $269,250 in unsecured claims.