**In re Stephen Lewis SOLOMON, Debtor.**

No. 00–41251.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

March 12, 2002.

Dennis Olson, Dallas, TX, for debtor.

Molly Bartholow, Dallas, TX, for creditor, Jones, Magee, Rudberg & Mayes.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

Now before the Court for consideration is the Creditor's Motion To Dismiss Pursuant To 11 U.S.C. §§ 105 and 707(a) filed by Carter, Jones, Magee, Rudberg & Mayes. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Stephen Lewis Solomon (the "Debtor"), initiated this bankruptcy proceeding by fil-

ing a petition for relief under Chapter 7 of Title 11 of the U.S.Code. Carter, Jones, Magee, Rudberg & Mayes ("Creditor") is a law firm that provided legal services to the Debtor in connection with a medical malpractice lawsuit in which he was a plaintiff prior to the filing of his petition. After the lawsuit failed, the Debtor filed suit against Carter, Jones, Magee, Rudberg & Mayes for legal malpractice. Debtor did not prevail in that matter, either. There is marked animosity between the parties.[1] Creditor filed the Motion to Dismiss Case Pursuant To 11 U.S.C. §§ 105 and 707(a) pleading as cause Debtor's lack of good faith (the "Motion") and seeking dismissal of the case. The Motion came before this Court pursuant to regular setting. Following a trial, the Motion was taken under advisement.

### DISCUSSION

Pursuant to 11 U.S.C. § 707(a), the Court "may dismiss a case under this chapter only after notice and a hearing and only for cause, including ...." a brief, illustrative but not exhaustive list follows, citing as example: unreasonable delay, non-payment of fees and charges and non-compliance with statutory requirements.[2] The decision to dismiss a petition in bank-

1. However, the law firm is not Debtor's sole, major creditor.

2. Pursuant to 11 U.S.C. § 707(b), "[a]fter notice and a hearing, the Court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor." *11 U.S.C. § 707(b)*. This section will not apply to the matter before the Court insofar as the motion has been brought by a

creditor. In other words, contrary to portions of Creditor's Brief in Support of Motion To Dismiss and the thrust of certain parts of the prosecution of the Motion at trial, this is not a "substantial abuse" case—it is a "cause" case and different standards and tests apply. The Creditor urges application of the "totality of the circumstances" test. The "totality of the circumstances" test seeks to answer the question of whether a debtor attempts to obtain an inequitable discharge at the expense of the debtor's creditors. See *Green v. Staples (In re Green)* 934 F.2d 568, 572 (4th Cir.1991). Discharge is not squarely before the Court here.

ruptcy lies within the discretion of the bankruptcy judge. *Matter of Atlas Supply Corp.*, 857 F.2d 1061, 1063 (5th Cir. 1988); *In re Cecil*, 71 B.R. 730(Bkrtcy.W.D.Va.1987).

Section 105(a) grants the Bankruptcy Court the power to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title...[as well as to] prevent an abuse of process." See also, *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 111 S.Ct. 2123, 2132–2133 115 L.Ed.2d 27 (1991).

■ The Court has reviewed in detail the pleadings, the record and exhibits adduced at the trial on the Motion To Dismiss and carefully considered the arguments of counsel and the testimony developed at such trial. The Court has also weighed the fact that the appointed Chapter 7 Trustee in this case has neither moved under § 707(b), filed a complaint under § 727 nor joined in the Creditor's Motion To Dismiss. The Code is silent as to what constitutes "cause", hence it has been judicially defined. "This section does not contemplate, however, that the ability of the debtor to repay his debts in whole or in part constitutes adequate cause for dismissal. To permit dismissal on that ground would be to enact a non-uniform mandatory chapter 13, in lieu of the remedy of bankruptcy." *H.R.Rep. No. 595, 95th Cong., 1st Sess. 380 (1977), reprinted in App. Pt. 4(d)(i) infra S.Rep. No. 989,* *95th Cong. 2nd Sess. 94 (1978), reprinted in App. Pt. 4(e)(i) infra,* U.S.Code Cong. & Admin.News 1978, pp. 5963, 5787.[3] Courts are split as to whether lack of good faith, as alleged by the disgruntled movant here, constitutes "cause" for dismissal. The moving Creditor's argument relies heavily upon *In re Zick*, 931 F.2d 1124 (6th Cir.1991) and *In re Tamecki*, 229 F.3d 205 (3rd Cir.2000)[4]. The *Zick* Court concluded that there was "good authority for the principle that lack of good faith is a valid basis for a decision in a 'for cause' dismissal by a bankruptcy court citing several bankruptcy court decisions." [Cites omitted here.]. *Zick, Ibid* at 1127. Several cases to which the *Zick* Court cites characterize "good faith" as a non-explicit jurisdictional requirement. *Cf. In re Huckfeldt*, 39 F.3d 829, 831 (8th Cir.1994), *In re Padilla*, 222 F.3d 1184 (9th Cir.2000) and *In re Khan*, 172 B.R. 613 (Bkrtcy.D.Minn.1994). None of the aforementioned rulings bind this Court. Moreover, *Zick* is distinguishable because the debtor was proceeding under a Chapter 11 rather than a Chapter 7. In addition, neither of the Fifth Circuit cases to which the Creditor cites involve a debtor in a Chapter 7 proceeding or a motion to dismiss, although *In re Little Creek* is cited for the proposition that a standard of good faith is required for "the commencement, prosecution and confirmation of bankruptcy proceedings."[5] Accordingly, those cases provide

---

**3.** Consequently, the Court gives no weight to the Creditor's argument that the "Debtor's financial prospects make him anything but an 'honest but unfortunate debtor'. Debtor has the ability to repay his creditors." *Creditor's Motion To Dismiss, page 1.*

**4.** A Florida bankruptcy court declined to follow *Tamecki*, but looked to *Zick* for guidance. *In re Riney*, 259 B.R. 217 (Bkrtcy.M.D.Fla. 2001).

**5.** *In re William Chaffin*, 836 F.2d 215 (5th Cir.1988) deals with the appeal of a ruling on whether a debtor proposed his Chapter 13 plan in good faith. *In re Little Creek*, 779 F.2d 1068 (5th Cir.1986) sets the standard for Chapter 11 debtor filings particularly within the context of a § 362(d) proceeding.

guidance, but are distinguishable on the facts.

In *In re Etcheverry*, 242 B.R. 503 (D.Colo.1999) the Federal District Court affirmed the Bankruptcy Court's decision not to dismiss a case filed under Chapter 7 on the United States Trustee's Motion on the basis that a debtor's alleged "bad faith" filing cannot constitute "cause" given that there is no implicit good faith filing requirement in Chapter 7. The District Court compared the language of the Bankruptcy Code in instances where a debtor preserves a relationship with creditors as well as the textual changes to the Code embodied in past amendments and legislation. The *Etcheverry* Court concluded that it would not impose a good faith requirement for a Chapter 7 debtor, notwithstanding the contrary holding in the Sixth Circuit (*In re Zick*, Supra.), given that the Supreme Court, the Tenth Circuit and Congress have not imposed a good faith requirement. It also noted that there are other "tactics" for dealing with debtors engaged in bad faith, e.g. 11 U.S.C. § 532(a)(2) and § 727(a).[6]

In *In re Riney*, 259 B.R. 217, 222 (Bkrtcy.M.D.Fla.2001), the Court discusses the issues of the legal standard applicable in determining whether "cause" exists to dismiss a chapter 7 case and the application of that standard:

> Some courts have held that "bad faith" constitutes "cause" for dismissal under § 707(a). *See Zick*, 931 F.2d 1124; *In re Tamecki*, 229 F.3d 205 (3d Cir.2000). As discussed by this court in a recent decision dealing with dismissal of an in-

dividual Chapter 7 case, while a good-faith requirement is explicitly imposed in chapter 11, 12 and 13 cases, 11 U.S.C. §§ 1129(a)(3), 1225(a)(3) and 1325(a)(3), that explicit reference is omitted in a chapter 7 case. *In re Bilzerian*, 258 B.R. 850, 855–56,(Bankr.M.D.Fla.2001) (dismissing individual Chapter 7 case for "cause" under Bankruptcy Code § 707(a))("Bilzerian ").

The key differences between Chapters 11, 12 and 13 on the one hand and Chapter 7 on the other are: (1) the language of the Bankruptcy Code itself regarding "good faith", and (2) the "post-filing relationship between the debtor and his creditors." *Neary v. Padilla* (In re Padilla), 222 F.3d 1184 (9th Cir.2000)("Padilla "). Chapters 11, 12 and 13 permit the debtor to "retain its assets and reorder its contractual obligations to its creditors. In return for these benefits, ... the debtor [must] approach its new relationship with the creditors in good faith ...." *Katie Thein Kimlinger & William P. Wassweiler, The Good Faith Fable of 11 U.S.C. § 707(a): How Bankruptcy Courts Have Invented a Good Faith Filing Requirement for Chapter 7 Debtors*, 13 Bankr.Dev. J. 61, 65 (1996)˙ ("Kimlinger and Wassweiler").

On the other hand, Chapter 7, a liquidation chapter, " 'requires no ongoing relationship between the debtor and its creditors' and should be available to any debtor willing to surrender all of its nonexempt assets, **'regardless of whether the debtor's motive in seek-**

---

**6.** Similarly, the Court in *In re Padilla*, determined that, given statutory construction requires that "where both a specific and a general statute address the same subject matter, the specific one takes precedence..." *In re Padilla, Ibid* at 1192 citing to *In re Khan*, 172 B.R. 613, 624 (Bkrtcy.D.Minn.1994) [citing to *Busic v. United States*, 446 U.S. 398, 406, 100

S.Ct. 1747, 64 L.Ed.2d 381 (1980) and *Preiser v. Rodriguez*, 411 U.S. 475, 489–490, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) ] and, therefrom, concluding that the debtor's misconduct should be analyzed under the most specific Code provision that addresses the type of misconduct.

ing such a remedy was grounded in good faith.'" *Padilla,* 222 F.3d at 1193 (citing *Kimlinger & Wassweiler,* 13 Bankr.Dev. J. at 65). [Emphasis added here.]

*In re Riney, Ibid.* The *Riney* Court denied the motion to dismiss. The Court determined that absent egregious conduct, a debtor who files a chapter 7 should not be denied a discharge by denial of the recourse to bankruptcy without a showing that the debt is non-dischargeable under Bankruptcy Code § 523 or that the debtor would not qualify for a discharge under Bankruptcy Code § 727. *In re Riney, Ibid* at 222 citing to *In re Motaharnia,* 215 B.R. 63,68 (Bkrtcy.C.D.Cal.1997). The rationale is that § 707(a) should only apply "where the debtor's motives are clearly inconsistent with the established purpose of the Bankruptcy Code". The *Riney* Court analyzed whether the debtor's motives and purposes were consistent with the purpose of Chapter 7—providing the honest debtor with a "fresh start". In particular, the *Riney* Court compared the debtor Riney's debt with that of the debtor in *In re Bilzerian* and determined that a significant portion of the debt scheduled by Bilzerian was found to be non-dischargeable such that the Court could not infer that the debtor filed his case to obtain a fresh start. *In re Bilzerian,* 258 B.R. 850, 855–56,(Bankr.M.D.Fla.2001). Riney, on the other hand, notwithstanding the fact that he had structured his finances to insulate his income from his creditor's collection efforts, and regardless of the Court's characterization of his expenses as "lavish" escaped the Court's dismissal, because the Court found no conduct that would result in a determination of non-dischargeability or denial of discharge.

Thus, as to the importance to be given by the Court in examining the debtor's motive of obtaining a "fresh start", Zick ["Good faith and candor are necessary pre-requisites to obtaining a fresh start." *Zick, Supra* at 1129] and Riney are compatible ["...whether case should be dismissed for 'cause' ...requires an analysis of whether the Debtor's motive and purposes are consistent with the purpose of Chapter 7—which is to provide an honest debtor with a fresh start in exchange for the debtor's handing over to a trustee all of the debtor's non-exempt assets." *Riney, Supra* at 223.]! Jurisprudence distinguishes between the "fresh start" purchase with the debtor's non-exempt assets and the "head start" obtained through an abuse of the process to which Section 105(a) of the Bankruptcy Code refers.

■ There is no evidence before this Court that the judgment debt to the moving Creditor or any other particular scheduled debt of this Debtor's is non-dischargeable under any section of 11 U.S.C. § 523 as contemplated in the case of *In re Riney, Supra.* Moreover, neither the Creditor nor the Chapter 7 Trustee have filed a complaint under 11 U.S.C. §§ 523 or 727. Indeed, the Creditor withdrew its motion to extend time for filing such a complaint. However, an analysis by this Court of whether the Debtor engaged in conduct that would result in a denial of discharge under § 727 yields a less fortunate result for this Debtor and one that brings this Court squarely within the parameters of § 105(a) plead by Creditor. The Court shall not grant a discharge to a debtor who has knowingly or fraudulently made a false oath in connection with his bankruptcy case. A debtor's schedules required under 11 U.S.C. § 521 are sworn to under penalty of perjury. The Fifth Circuit Court of Appeals affirmed the bankruptcy court's entry of summary judgment denying a debtor's discharge under 11 U.S.C. § 727(a)(4)(A) for a debtor knowingly or fraudulently making a false oath or account in connection with his bank-

ruptcy case. [The Debtor testified in his deposition that some information in his schedules and statements was false.] *In re Sholdra,* 249 F.3d 380 (5th Cir.2001). (See also, *Matter of Beaubouef,* 966 F.2d 174, 178 (5th Cir.1992) in which the 5th Circuit affirmed the District Court's judgment affirming the bankruptcy court's ruling that debtor's failure to list ownership interests with reckless disregard and intention to deceive justified denial of discharge. In *Beaubouef* the Court inferred intent to deceive from the existence of one or more falsehood coupled with the debtor's failure to take advantage of the opportunity to correct inconsistencies and omissions. *Beaubouef,* Ibid at 178.) The testimony at trial and the documentary evidence adduced reveal what the debtor considered oversights and inaccuracies made in his Schedules and Statement of Financial Affairs filed with this Court on May 16, 2000 ( referred to hereinafter collectively, simply as "Schedules"). The

Schedules have not been amended to date even though errors were revealed during the trial. (The sole change to the Schedules since their original filing resulted from objections to the Debtor's scheduled exemptions which were disposed of by a consent order.) For example, during the trial the Debtor admitted that the budget item on Schedule "J"—Current Expenditures of Individual Debtor for charitable contributions in the amount of $400 monthly was an error. Other inconsistencies, such as listing debts that had previously been paid, were identified and the Debtor offered testimony of mitigating circumstances to explain the errors. The Court finds profoundly disturbing the fact that all mistakes made were made in the Debtor's favor and were designed to reach a result favorable to him.[7] This Court encounters debtors regularly who err in preparation of schedules. In this instance, though, the Court notes that the schedules were not prepared haphazardly or assem-

---

7. The Court agrees with the Hon. Mary D. Scott who stated in *In re Kilker,* 155 B.R. 201, 204 (Bkrtcy.W.D.Ark.1993) [and reiterated in *In re Martin,* 199 B.R. 175, 177–178 (Bkrtcy. E.D.Ark.1996)]: "The blatant and fraudulent manipulation of information on the schedules to obtain a particular result is an unfair and insidious abuse of the bankruptcy process." See also, *In re Clark,* 86 B.R. 593, 594 (Bkrtcy.E.D.Ark.,1988). In the instant case, the inaccuracies are most prevalent in the listing of unsecured nonpriority creditors. Some of the most notable are as follows: The creditor listed Great Southern Bank as an unsecured creditor in the amount of $11,500 but evidence revealed that the Creditor is secured by a mortgage on rental property in Missouri for which there is a secured debt of $6,358 on Schedule D. The Debtor was unable to explain why and he admitted that he thought Great Southern was a fully secured debt. Chase Mortgage was listed in Schedule F in the amount of $127,300. However, testimony revealed that the amount was actually zero. Debtor also listed Colonial Mortgage Company in the amount of $128,000 but admitted at trial that the debt had been paid in

1995 when the house in question was sold. His only explanation was that he listed the debt because Colonial Mortgage still appeared on his credit report. BTI Services of Jacksonville, Florida was listed in the amount of $11,491 but Debtor admitted at a discovery deposition that the actual amount was zero. Debtor also listed a debt to Nieman Marcus as an unsecured debt of $16,981 but further investigation reveals that that was a commission recapture amount that was properly shown on Schedule I as an adjustment to commissions. Although not discussed at trial, Debtor's schedules show an unsecured debt to Citibank of $6,009 and an identical debt of $6,009 to Collecttech. Which certainly gives rise to an indication that this may be the same debt listed to the creditor and to a collection agency to whom it has been referred. Ignoring the questionable issue of the Citibank/Collecttech debt, these amounts inflate the Debtor's unsecured debt from $130,613.33 to $425,885.33. Perhaps it is just coincidental that the increase of $295,272 causes the debt to exceed the debt eligibility limits for a Chapter 13 debtor under 11 U.S.C. § 109(e).

bled in haste on the eve of a foreclosure to be later amended. The Court must also take into account the Debtor's familiarity with matters of bankruptcy[8], the duties of a debtor under 11 U.S.C. § 521 and the responsibility to accurately prepare one's schedules. This Debtor knew or should have known if there were errors in his Schedules. He was well apprised of his duty to investigate and verify all information to which he swore in his Schedules and Statement of Financial Affairs. This Court believes that if the Debtor did not know of the inaccuracies in his Schedules it was by choice.[9] See, e.g. *In re Quiles*, 262 B.R. 191 (Bkrtcy.D.R.I.2001) [a Chapter 13 case in which the court noted, "Totally belying all of her testimony on this issue, and damaging to her credibility generally, is the fact that [debtor] has worked in a law office as a paralegal for the past 11 years, *specializing in the preparation of Chapter 7 cases" {emphasis in original}]*. Filing false or misleading schedules is an abuse of process; it is a failure to deal honestly with the Court[10] and one's creditors. It is the type of malfeasance that the Court has been empowered to protect against through § 105. See *In re Chisum*, 68 B.R. 471 (9th Cir. BAP 1986), *aff'd* 847 F.2d 597, *certiorari denied* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 ["Bankruptcy court has inherent power to impose sanctions on parties and counsel who willfully abuse judicial process." *Chisum, Ibid* at *473*.]

 Regardless of Debtor's good or bad faith in connection with the preparation of these totally inaccurate schedules, this Court believes that Creditors are entitled to have accurate bankruptcy schedules and full disclosure of Debtor's actual financial condition. Whether an accurate disclosure would have made any difference in the conduct of this bankruptcy case is not before this Court at this time. What is clear is that Debtor filed schedules of debts that he had manipulated to reflect something other than his true financial condition, and whatever his motive, that is not proper. For the foregoing reasons, the Creditor's Motion should be granted and this case should be dismissed. An order of dismissal will be entered accordingly.

---

**8.** The debtor is a licensed, practicing attorney, admitted to practice in this District, with specialization in the field of bankruptcy including a term of service as law clerk for a United States Bankruptcy Judge.

**9.** The finding of "choice" satisfies the requirement that the Debtor's misstatement be made with fraudulent intent or reckless indifference to the truth which can be proven by circumstantial evidence. *Sholdra, Ibid* at *382*.

**10.** In this case, the failure is double because the Debtor has the duty both as a debtor under the Bankruptcy Code and as an attorney licenced to practice in this State and before this Court.