**In re Kevin ADELL, Debtor.**

**No. 9:03–BK–23684–ALP.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Oct. 4, 2005.

Asher Rabinowitz, Ruden, McClosky et al., Tampa, FL, for Debtor.

**_ORDER ON MOTION TO DISMISS_**
(Doc. No. 677)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THIS is the second attempt by John Richards Homes Building Company,

L.L.C. (JRH) to prohibit Kevin Adell (the Debtor) to continue to enjoy the protection available to debtors through the automatic stay provisions of § 362 of the Bankruptcy Code.

The Debtor's bankruptcy case, which began with the voluntary Petition for Relief under Chapter 11 filed on November 13, 2003, was first challenged approximately 20 months ago by JRH through a Motion to Dismiss the Chapter 11 case (Doc. No. 145), filed on February 10, 2004 and amended by the Amended Motion to Dismiss (Doc. No. 153) filed on February 19, 2004. JRH in both its Motions alleged that the Petition of the Debtor was filed in bad faith, and therefore the Chapter 11 case should be dismissed for cause pursuant to § 1112(b) of the Code.

JRH alleged that the Debtor's purpose in seeking relief in the Bankruptcy Court of the Middle District of Florida was to evade his responsibility to satisfy an award of sanctions, granted pursuant to § 303(i) of the Bankruptcy Code, by the Bankruptcy Court of the Eastern District of Michigan (the Michigan Bankruptcy Court) in the total amount of $6,413,230.68 to JRH against the Debtor on April 25, 2003, (the Sanctions Award) and specifically to protect his newly acquired residence in Naples, Florida, from the claim of JRH by claiming the residence as his homestead under article X, section 4 of the Florida Constitution. In this connection it should be noted that the Michigan Bankruptcy Court ruled on September 17, 2003, or about two months before the commencement of the Chapter 11 case, that § 303(i) of the Bankruptcy Code trumps the Florida homestead exemption or, in the alternative, that the Naples residence does not qualify for the homestead protection of the Florida Constitution, and directed the sale of the Naples residence to satisfy the Sanctions Award at least partially.

In due course the Motion as Amended was set for final hearing and on May 28, 2004, this Court entered its Order on Motion to Dismiss (Doc. No. 287). This Court in its Order noted that the facts established at the evidentiary hearing revealed a classic picture of a two party dispute which may be the basis for a dismissal. *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir.1988). Nevertheless, this Court ordered that the Debtor should be given an opportunity to propose a confirmable Plan. In fact, the Debtor had already filed his Disclosure Statement and Plan of Reorganization prior to the hearing on the Motion to Dismiss.

JRH, having been aggrieved by the Order denying its Motion to Dismiss, timely challenged the Order and filed a Notice of Appeal (Doc. No. 304).

It soon became apparent that the Plan filed by the Debtor could not be confirmed. Notwithstanding this, based on representations by the Debtor and on proposed changes to the Plan, this Court granted leave to file an Amended Plan. The Debtor filed his Fourth Amended Plan (Doc. No. 352) on August 6, 2004, as modified and supplemented. This last Plan provided that the Debtor would post $7,000,000 in escrow to secure the full payment of the amount ultimately found to be due to JRH in the event the Sanctions Award, which is currently pending before the United States Court of Appeals for the Sixth Circuit, is affirmed.

It also should be noted that the Debtor attempted several times to obtain a stay of the enforcement of the Sanctions Award by posting a supersedeas bond. The Debtor attempted to post the bond, first in the Michigan Bankruptcy Court and second in the United States District Court for the Eastern District of Michigan, without success in either court.

The Fourth Amended Plan as supplemented and modified was finally scheduled to be considered for confirmation. Not to anyone's surprise JRH filed several Objections to the Confirmation as it did to all the previous Plans filed by the Debtor, even though this last version as noted earlier guaranteed the full satisfaction of its allowed claim in the event JRH prevails on appeal.

The reason JRH rejected the Plan became obvious when JRH served a Writ of Garnishment on the Debtor's employers, STN.com (STN) and Adell Broadcasting, Inc. (Adell Broadcasting), attempting to garnish the Debtor's wages. Both STN and Adell Broadcasting filed their respective answers to the Writ, claiming that neither of them is indebted to the Debtor. JRH promptly challenged the truthfulness of these answers and contended that under the applicable statute of the State of Michigan both STN and Adell Broadcasting are liable for the full amount of the sanctions awarded against the Debtor by the Michigan Bankruptcy Court. According to JRH, this liability is separate and independent from the liability of the Debtor. JRH sought a determination that the automatic stay does not protect STN and Adell Broadcasting and, therefore, it should be free to prosecute its claim of close to $20,000,000.00 against these entities. The Michigan Bankruptcy Court rejected this proposition and held that, construing the statute relied on by JRH, its claims against STN and Adell Broadcasting were de facto claims against the Debtor. Thus, the Michigan Bankruptcy Court ruled that JRH is barred by the operation of the automatic stay from prosecuting its claims against these entities as long as the Debtor is protected by the automatic stay.

In the meantime, this Court scheduled a hearing for May 19, 2005, to consider the confirmation of the Debtor's Fourth Amended Plan as Modified and Supplemented. However, on May 11, 2005, the District Court handed down its decision in the appeal taken by JRH from this Court's Order (Doc. No. 287) denying JRH's Amended Motion to Dismiss the Chapter 11 case of the Debtor (Doc. No. 153), and reversed this Court and "dismissed the case." Based on this Order, the Clerk of the District Court entered a Judgment dismissing the Chapter 11 case even though the District Court did not withdraw the reference and had no case pending before it.

On May 12, 2005, prior to the expiration of the stay of all orders on appeal provided for by Federal Rule of Bankruptcy Procedure 8017, the Debtor filed his Notice of Voluntary Conversion (Doc. No. 607), converting his Chapter 11 case to a Chapter 7 case. On May 17, 2005, this Court entered an Order Converting Case to Chapter 7 (Doc. No. 615). The Debtor also filed an Emergency Motion for extension of the ten day stay period pending the District Court's ruling on a Motion for Rehearing filed on May 17, 2005. On May 18, 2005, the District Court granted the motion and extended the stay pending the ruling on the Debtor's Emergency Motion for Rehearing.

On May 17, 2005, JRH filed an Emergency Motion to enforce the May 11, 2005, Order which reversed this Court and dismissed the Chapter 11 case of the Debtor. On May 18, 2005, the District Court denied the Emergency Motion of JRH. The District Court in its Order noted that it failed to remand the case to the Bankruptcy Court with the appropriate instruction to carry out the May 11 Order and, thus, that Order did not operate as the final dismissal of the "case" pending in this Court.

This leads to the immediate matter under consideration, which is the Motion to Dismiss the Chapter 7 case of the Debtor,

filed by JRH pursuant to § 707(a) of the Code. At the hearing to consider the Motion to Dismiss, counsel for JRH stated on oral argument that JRH filed a Motion to Withdraw the Reference, and that therefore this Court should not consider its Motion to Dismiss the Chapter 7 case of the Debtor until the District Court rules on the Motion to Withdraw the Reference. Counsel for the Debtor opposed the proposition advanced by counsel for JRH. This Court considered the effect of the Motion to Withdraw the Reference and concluded that by virtue of Federal Rule of Bankruptcy Procedure 5011(c), the Motion to Withdraw the Reference does not stay the administration of the case or any proceeding within the case. Based on the foregoing, this Court declined to abstain from considering the Motion to Dismiss the Chapter 7 case filed by JRH, and directed counsel to present their respective argument in support of and in opposition to the Motion to Dismiss.

JRH's Motion to Dismiss the Chapter 7 case of the Debtor is filed pursuant to § 707(a) of the Code which reads as follows:

(a) The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including—

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file... the information required by paragraph (1) of section 521....

Counsel for JRH contended first that the Debtor was guilty of unreasonable delay that is prejudicial to the creditors. In addition, counsel for JRH stated that dismissal is warranted for "cause," the cause being the entire history of the protracted litigation between JRH and the Debtor, not only in this Court but also in the Michigan Bankruptcy Court.

According to counsel for JRH, the specific grounds for dismissal described in subparagraphs (1), (2), and (3) are not the only grounds that warrant the dismissal of a case; the term "cause" as used in § 707(a) permits an inquiry based on the totality of all relevant facts and circumstances. *See Huckfeldt v. Huckfeldt (In re Huckfeldt),* 39 F.3d 829 (8th Cir.1994). In this case, counsel argued that the conduct of the Debtor reflects an egregious abuse of the bankruptcy system, which is within the term "cause" used in § 707(a).

Counsel for JRH further pointed out that this case was from day one a two party dispute between JRH and the Debtor, that the Debtor's only other creditors are STN and Adell Broadcasting (both insiders and both corporations owned or at least controlled by the Debtor's father), the claim of the IRS which the Debtor has no difficulty in paying and which in fact already has been paid in full, and the claims of the attorneys representing the Debtor. According to counsel for JRH, since the Debtor could not receive a discharge because he converted nonexempt property into exempt property with the specific intent to hinder, delay, or defraud JRH, there is no justification to maintain the Chapter 7 case, except to prolong the protection of the Debtor's homestead by the automatic stay.

In opposition to the Motion to Dismiss, counsel for the Debtor contended that the Debtor has the absolute right to convert his Chapter 11 case to a Chapter 7 case. Counsel also argued that bad faith is not a proper grounds for dismissal under § 707(a). *See Neary v. Padilla (In re Padilla),* 222 F.3d 1184 (9th Cir.2000).

Counsel argued that bad faith, if it where intended as one of the grounds, would have been listed, and that it does not fit within the same category as the grounds that are listed, urging a reading informed by ejusdem generis, the well-recognized maxim of statutory construction also known as Lord Tenderden's rule, which requires that "where particular words of description are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described." *U.S. v. Mescall*, 215 U.S. 26, 31, 30 S.Ct. 19, 54 L.Ed. 77 (1909).

■ The difficulty in accepting the applicability of the maxim should be evident from the text of the statute, in that the term "cause" is followed by the term "including," leaving no doubt that the specific grounds set forth in § 707(a) are not the only grounds that may warrant dismissal. See 11 U.S.C. § 102(3) (" 'includes' and 'including' are not limiting"); *Padilla*, 222 F.3d at 1191; *Huckfeldt*, 39 F.3d at 831 (8th Cir.1994); *Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1126(6th Cir.1991). Based on the foregoing, this Court is satisfied that the list in § 707(a) is not exhaustive, but is merely illustrative.

■ Disregarding the application of any potential bad faith findings surrounding the Chapter 7 case, grounds for dismissal also may arise from facts that show that the Chapter 7 case under consideration is not supported by the well-established policy aims of Congress, articulated by the courts and commentators alike during the last century. While it is true that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, S. 256, 109th Cong. (2005), signed into law on April 20, 2005, may have rendered these policy aims *no longer relevant, the relevant amendment only becomes effective on October* 17, 2005, and this case is still governed by the current law.

The policy aims referred to stand for the proposition that Chapter 7 was designed, in the case of an individual, to permit the individual, through the discharge available to honest but unfortunate debtors, to have a fresh start in life freed from the financial misfortunes of the past in exchange for the surrender to the trustee of all nonexempt property of the debtor to be liquidated and distributed to creditors pursuant to the applicable provisions of § 726 of the Code. See, e.g., *In re Krohn*, 886 F.2d 123, 127 (6th Cir.1989) ("The goals of bankruptcy are to provide an honest debtor with a fresh start and to provide for an equitable distribution to creditors.").

In addition to the Debtor's use of the bankruptcy process, not just in his previous Chapter 11 case but specifically in this Chapter 7 case, to frustrate JRH's collection actions, the undisputed facts of this heavily litigated case leave no doubt that maintaining this Chapter 7 case would not serve the first aim, the fresh start principle, because it is unlikely that the Debtor will receive a discharge. Ordinarily it is improper to prejudge the merits of a dispute before it is properly before the court. However, on the facts presented in this case, the record is clear and leaves no doubt that the conversion of nonexempt property into exempt homestead property was done for the sole and limited purpose of preventing JRH from reaching the homestead.

■ In an adversary proceeding related to this case, JRH has objected to both the dischargeability of the Sanction Award debt, as well as the Debtor's discharge. *John Richards Homes Building Company, L.L.C. v. Kevin Adell*, Adv. Pro. No. 04–89. The first four counts of the Complaint object to the Debtor's discharge, alleging violations of 11 U.S.C. § 727(a). Although

there are significant questions as to the first three of these counts, it should be clear that the allegations of Count I, alleging a violation of § 727(a)(2)(A), are correct. The record in this case leaves no doubt that the Debtor converted nonexempt assets into exempt assets, namely his Naples, Florida, homestead; that the transfer took place within one year before the date of the filing of the petition; and, based on the circumstances and events surrounding the sudden move to Florida, the transfer was made with the intent to hinder, delay, or defraud a creditor, JRH. While the Debtor's homestead exemption is protected by the Florida Constitution and not subject to attack under these circumstances, *Havoco of America, Ltd. v. Hill*, 790 So.2d 1018 (Fla.2001), his discharge is vulnerable. Even disregarding the objection as to the dischargeability of the debt, on this record it is clear that the Debtor cannot be granted a discharge, by virtue of § 727(a)(2)(A). As the Debtor is not entitled to a discharge, the fresh start policy is not applicable, and the continuation of this case must be based on some other rationale. Compare *In re Riney*, 259 B.R. 217 (Bankr.M.D.Fla.2001) (denying motion to dismiss under § 707(a) where debtor properly sought a fresh start) with *In re Bilzerian*, 258 B.R. 850 (Bankr.M.D.Fla.2001) (granting motion to dismiss under § 707(a) where vast majority of debt previously declared nondischargeable).

Neither will the continuation of this case further the second policy goal underlying Chapter 7, the equitable distribution of the liquidation proceeds pursuant to the applicable provisions of the Code. As noted earlier, the only creditors who have allowable claims in this case are JRH, STN, Adell Broadcasting, and the attorneys representing the Debtor in Michigan and in the present case in this District. STN and Adell Broadcasting are insiders of the Debtor, leaving JRH as the sole creditor adverse to the Debtor. With only one "real" creditor, there is little competition for the Debtor's assets, no race to the courthouse, and no need to employ the automatic stay to ensure an equitable and orderly distribution of the Debtor's assets.

Based on the foregoing, it is evident that the only justification for maintaining this Chapter 7 case is to use the automatic stay to hold JRH at bay and further protect the Debtor, STN, and Adell Broadcasting as long as possible, hoping that the appeal from the Sanctions Award will be resolved in favor of the Debtor and against JRH. This is not and never has been the basis of policy aims of Congress in enacting the Bankruptcy Code and specifically Chapter 7. Having concluded that the term "cause" as used in § 707(a) includes the consideration of all the relevant facts and circumstances, based on the totality of the circumstances of this case and the two policy aims behind Chapter 7 of the Bankruptcy Code, this Court is satisfied that the Motion to Dismiss is warranted.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Dismiss this Chapter 7 case is granted and the Chapter 7 case of Kevin Adell be, and the same is hereby, dismissed.